In re RUSTIGIAN.

(Circuit Court, D. Rhode Island. December 22, 1908.)

1. ALIENS (§ 40*) — CONFLICT BETWEEN IMMIGRATION AND NATURALIZATION LAWS.

It was no part of the intended policy of Rev. St. § 1994 (U. S. Comp. St. 1900, p. 1268), providing that any woman who is now or may hereafter be married to a citizen of the United States, and who might herself be lawfully naturalized, shall be deemed a citizen, to annul or override the immigration laws, so as to authorize the admission into the country of the wife of a naturalized alien not otherwise entitled to enter.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 100; Dec. Dig. § 40.*]

2. ALIENS (§ 70*) — NATURALIZATION — WIFE OF NATURALIZED ALIEN — "WHO MIGHT HERSELF BE LAWFULLY NATURALIZED."

Rev. St. § 1994 (U. S. Comp. St. 1901, p. 1268), provides that any woman married to a citizen of the United States, and who might herself be lawfully naturalized, shall be deemed a citizen. Held, that the clause "who might herself be lawfully naturalized" limited such section to a woman lawfully within the country, her own capacity, independent of her marital status, being essential to attainment of citizenship, so that, where the wife of a naturalized alien was not entitled to enter the country under the immigration regulations because afflicted with a contagious disease, she would not become a citizen entitled to enter by the naturalization of her husband.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 157; Dec. Dig. § 70.*]

James A. Williams, for petitioner.
Williams H. Lewis, Asst. U. S. Atty.

BROWN, District Judge. The petitioner is a subject of the Sultan of Turkey, resident in Burrillville, R. I. His declaration of intention

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to become a citizen of the United States was filed February 21, 1906. His present petition was filed July 15, 1908.

Prior to July 15, 1908, his wife, Egsha Rustigian, a Turkish subject, had come to this country for the first time, and on June 18, 1908, was refused admission by the immigration officers at New York as an alien afflicted with a dangerous contagious disease, trachoma. She is detained at the Immigration Hospital at Ellis Island, New York.

The exclusion from admission to the United States was under Immigration Act Feb. 20, 1907, c. 1134, § 2, 34 Stat. 898 (U. S. Comp. St. Supp. 1907, p. 391). Section 37 of this act makes express provision for holding, under such circumstances, the wife or minor children of an alien who has taken up his permanent residence in this country and shall have filed his declaration of intention to become a citizen, until it shall be determined whether the disorder will be easily curable, or whether such persons can be permitted to land without danger to other persons, and that they shall not be either admitted or deported until such facts have been ascertained.

Rule 11 of the immigration regulations also deals with this subject.

Counsel for the United States opposes the granting of this petition upon the ground that, if granted, it will naturalize, not only the petitioner, but his wife as well, and thus entitle her to admission to the United States as an American citizen, since section 2 of the immigration act excludes only aliens.

Both counsel for the petitioner and special counsel for the United States agree in this interpretation of the law.

If it be true that a decree granting this petition, which was filed solely in the right of the husband, necessarily will have the effect of conferring American citizenship and a right of admission to the country upon a person otherwise in the excluded class, and thus override or avoid the provisions of the immigration acts, it is exceedingly doubtful if the petitioner, who seeks to bring into this country a person with a dangerous contagious disease, can meet the requirement of the naturalization act (Act June 29, 1906, c. 3592, § 4, par. 4, 34 Stat. 598 [U. S. Comp. St. Supp. 1907, p. 422]), and make it appear to the satisfaction of the court that he is well disposed to the good order and happiness of the United States.

With all sympathy for a husband who desires to bring his wife to his adopted country, we cannot disregard the higher consideration of the welfare and happiness of the citizens of the United States. If this proceeding is in substance for the naturalization of two persons, and is necessarily of joint effect, then the incapacity of one may well be regarded as sufficient cause for refusing naturalization to both.

It is no part of the intended policy of section 1994 (U. S. Comp. St. 1901, p. 1268), or of the naturalization laws, that they should annul or override the immigration laws. If the marital status makes it impossible to deal with the husband and wife separately, it is more consistent with the welfare of the citizens of the United States to deny them both than to admit them both; and it is quite as reasonable to deny both as to admit both.

I am unable, however, to approve of the soundness of the contention that the naturalization of the husband does change the political status of

a wife who has not actually gained admission into the United States. Zartarian v. Billings, 204 U. S. 170, 27 Sup. Ct. 182, 51 L. Ed. 428, relates to the admission of minor children and to a statute with the phrase "if dwelling in the United States." Yet it contains expressions which seem to indicate that the political status of the alien wife cannot be changed until she comes within the territorial limits of the United States.

If her presence is a prerequisite to naturalization it should follow that naturalization cannot be resorted to to secure a right of entry. On page 175 of 204 U. S., page 183 of 27 Sup. Ct. (51 L. Ed. 428), it is said:

"It is pointed out by Mr. Justice Gray, delivering the opinion in United States v. Wong Kim Ark, 169 U. S. 649–686, 18 Sup. Ct. 456, 42 L. Ed. 890, that the naturalization acts of the United States have been careful to limit admission to citizenship to those 'within the limits and under the jurisdiction of the United States.'"

In Shanks v. Dupont, 3 Pet. 242, 7 L. Ed. 666, it was said:

" * * *. Marriage with an alien, whether a friend or an enemy, produces no dissolution of the native allegiance of the wife. It may change her civil rights, but it does not affect her political rights or privileges. The general doctrine is that no persons can by any act of their own, without the consent of the government, put off their allegiance and become aliens. If it were otherwise, then a feme alien would by her marriage become, ipso facto, a citizen, and would be dowable of the estate of her husband, which is clearly contrary to law."

This case recognizes clearly that the marital status alone is not sufficient to confer upon the alien wife the political status of her husband. Van Dyne on Naturalization, p. 227.

It has been suggested, however, that section 1994 of the Revised Statutes (U. S. Comp. St. 1901, p. 1268) has the effect of conferring citizenship upon a feme alien married to an American citizen, irrespective of her presence within the jurisdiction of the United States. This section is as follows:

"Any woman who is now, or may hereafter be, married to a citizen of the United States, and who might herself be lawfully naturalized, shall be deemed a citizen."

An alien woman who is of a class of persons excluded by law from admission to the United States does not come within the expression "who might herself be lawfully naturalized."

The case of Kelly v. Owen, 7 Wall. 496, 19 L. Ed. 283, did not involve the question of the necessity of the wife's coming within the territorial limits of the United States. The persons whose citizenship was in question were all resident in the United States.

The expression used by Mr. Justice Field, "The terms 'who might lawfully be naturalized under existing laws' only limit the application of the law to free white women," must be interpreted in its application to the special facts and to the incapacities under the then existing laws. The immigration laws have since added to the classes of persons who are incapable in their own right of naturalization. It is not enough under existing law that the applicant for admission to the country be

a "free white person." She must also be a person not within the classes excluded by the immigration laws.

The citizenship of the husband is extended to the wife by this statute only when she herself is a person who might be lawfully naturalized. Her own capacity is a prerequisite to her attaining citizenship. If herself lacking in that capacity, the married status cannot confer it upon her.

In Van Dyne on Naturalization, p. 233, it is said:

"Whether, under this law, residence in the United States is essential, in order to confer citizenship upon a woman of foreign nationality married to a citizen of the United States, is not entirely well settled, although the better view appears to be that such residence is necessary."

It is difficult to justify an interpretation of section 1994 which makes it applicable outside the territorial jurisdiction of the United States and which attributes to Congress an intention to change the political status of alien women resident in the country of their nativity and who have never come within our territory.

The language of Secretary Olney in 1896 (quoted in Van Dyne on Naturalization, 237, 238) seems to express the better view:

"The naturalization laws of the United States being obviously framed to permit the bestowal of the franchise of citizenship upon certain persons of alien birth who are within its jurisdiction, and the application of these statutes being intrusted to the judicial branch, it is clear that they cannot operate to naturalize by indirection or by executive interpretation a person who is an alien by birth and origin, who has never been within the jurisdiction of the United States, and who at the time may be dwelling within a foreign jurisdiction."

The contrary interpretation is inconsistent with "the principle that citizenship cannot be conferred by the United States on the citizens of another country when under such foreign jurisdiction," etc. See Zartarian v. Billings, 204 U. S. 174, 175, 27 Sup. Ct. 182, 51 L. Ed. 428.

If, however, it was the intention of Congress in enacting section 1994 to confer citizenship upon any person who has never been within the territorial jurisdiction of the United States, it seems entirely unreasonable to hold that it was the intention of Congress to confer American citizenship upon an alien who is excluded by the immigration acts from admission to the country.

The petitioner has urged that his petition be granted in order that he may thereby gain the right to bring his wife into the country. I am of the opinion that a decree of naturalization cannot have this effect. If convinced that it did, I should be constrained to deny this petition at once.

So far as I am informed, it has not yet been determined whether the disease with which the wife is afflicted is curable or incurable. If incurable, the wife will be subject to deportation. Whether, in this event, the petitioner will still persist in his application for citizenship, is uncertain. Under the peculiar circumstances of the case, and to avoid the decision of what may turn out to be moot questions, the case may stand continued until the determination of the character of the petitioner's wife's disease, or until the petitioner shall elect whether to proceed further in his application for citizenship.